UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION


1ST TECHNOLOGY, LLC,                )
                                    )
            Plaintiff,               )
                                    )
       v.                            )     No. 4:08 CV 586 DDN
                                    )
DIGITAL GAMING SOLUTIONS S.A.,      )
COSTA RICA INTERNATIONAL SPORTS     )
S.A., ACTION POKER GAMING           )
ENTERPRISES, eCOM ENTERPRISES,      )
PLAYSAFE HOLDING AS, SBG GLOBAL,    )
and DIGITAL GAMING NETWORK, LTD.,   )
                                    )
            Defendants.              )

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendant PlaySafe Holding AS to dismiss for lack of personal jurisdiction (Doc. 13), and the motions of plaintiff 1st Technology, LLC, to serve by alternate means defendants Costa Rica International Sports S.A. (Doc. 28), Digital Gaming Solutions S.A. (Doc. 29), eCom Enterprises (Doc. 30), and Action Poker Gaming Enterprises (Doc. 30). The matter was assigned to the undersigned United States Magistrate Judge for review and a recommended disposition in accordance with 28 U.S.C. § 636(b).


**I.  BACKGROUND**

Plaintiff 1st Technology, LLC, brought this action for patent infringement against Digital Gaming Solutions S.A. (Digital Gaming Solutions), Costa Rica International Sports S.A. (CRIS), Action Poker Gaming Enterprises (Action Poker), PlaySafe Holding AS (PlaySafe), eCom Enterprises, SBG Global, and Digital Gaming Network Ltd. (Digital Gaming Network). (Doc. 4.)

According to the amended complaint, Digital Gaming Solutions, CRIS, Action Poker, and SBG Global are foreign corporations located in Costa Rica, PlaySafe and eCom Enterprises are foreign corporations located in Norway, and Digital Gaming Network is a foreign corporation located in Curacao. (Id. at ¶¶ 5-11.) 1st Technology alleges that the court has personal jurisdiction over the defendants because the defendants

committed acts of infringement in this district, conducted business in this district, and/or maintained systematic and continuous contacts in this district. (Id. at ¶ 13.) To date, only PlaySafe has been served. (Doc. 24.) None of the defendants have answered the amended complaint.

## II. MOTION TO DISMISS

PlaySafe moves to dismiss the case against it for lack of personal jurisdiction. PlaySafe argues that it does not make, use, sell, or offer to sell any products or services in the United States. The company argues that it does not have any employees in Missouri, has not paid taxes in Missouri, and does not conduct any business in Missouri. Finally, PlaySafe argues that its website is not interactive, but simply informational or passive.[1] (Doc. 14.) The Chairman of PlaySafe, Helge Almestad, has filed an affidavit in support of these arguments. (Doc. 14, Ex. 1.)

In response, 1st Technology argues that PlaySafe is subject to personal jurisdiction based on specific jurisdiction, general jurisdiction, and Rule 4(k)(2). In particular, 1st Technology argues that PlaySafe's website provides interactive links to an allegedly infringing website of its subsidiary, eCom Enterprises. 1st Technology argues that this website is interactive, accessible in Missouri, and contains several references to PlaySafe. In the alternative, if the court finds there is no personal jurisdiction, 1st Technology requests leave to conduct jurisdictional discovery. (Doc. 19.)

## III. MOTIONS TO SERVE BY ALTERNATE MEANS

1st Technology moves to serve by alternate means defendants CRIS, Digital Gaming Solutions, eCom Enterprises, and Action Poker. In particular, 1st Technology moves to serve CRIS, by directing service, by

---

[1]There are three categories of Internet sites: 1) interactive sites, which are used to conduct business over the Internet; 2) semi-interactive sites, which allow an exchange of information with the host computer; and 3) passive sites, which do not conduct business, and do not allow any exchange of information between the user and the host computer. See Enter. Rent-A-Car Co. v. Stowell, 137 F. Supp. 2d 1151, 1155 (E.D. Mo. 2001).

-2-

e-mail, on the company's United States lawyer, James Henderson. (Doc. 28.) 1st Technology moves to serve Digital Gaming Solutions by also directing service, by e-mail, on James Henderson, who serves as Digital Gaming Solutions's lawyer as well. (Doc. 29.) 1st Technology moves to serve eCom Enterprises by directing service on the United States lawyer for PlaySafe, its parent corporation. (Doc. 30.) 1st Technology moves to serve Action Poker by also directing service on the United States lawyer for PlaySafe, or by directing service on eCom Enterprises, after it has been successfully served. 1st Technology asserts that Action Poker is owned and operated by eCom Enterprises, which is a fully owned subsidiary of PlaySafe. (Id.)

In response, PlaySafe objects to accepting service of process on behalf of either eCom Enterprises or Action Poker. PlaySafe argues that there is no precedent to support service of process through counsel for a separate corporation. Finally, PlaySafe asserts that there is no company named Action Poker Gaming Enterprises. Instead, PlaySafe notes that eCom Enterprises acquired Action Poker Gaming, Inc., which was part of the Action Poker Network of on-line gaming websites. (Doc. 31.)

## IV. DISCUSSION

The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County, 480 U.S. 102, 109 (1987). In cases intimately involved with patent law, the law of the Federal Circuit applies to jurisdictional questions, and not the law of the regional circuit. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Whether a state can exercise personal jurisdiction over an out-of-state defendant involves a dual inquiry. Id. The first question asks whether the state's long-arm statute permits service of process. Id. The second question asks whether the assertion of personal jurisdiction would violate due process. Id. In situations where the state long-arm statute is coextensive with the limits of due process, these two inquiries coalesce into one. Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005). In Missouri, the state's long-arm statute is

broadly construed to reach as far as due process will allow. Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000). As a result, the focus in this case is on the due process requirement. See Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003); see Enter. Rent-A-Car, 137 F. Supp. 2d at 1155.

To subject an out-of-state defendant to personal jurisdiction, due process requires that the defendant have certain minimum contacts with the forum state, such that maintaining the lawsuit does not offend traditional notions of fair play and substantial justice. Inamed, 249 F.3d at 1360 (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). The "minimum contacts" requirement focuses on (1) whether the defendant has purposefully directed his activities at residents of the forum, and (2) whether the litigation results from alleged injuries that arise out of, or relate to those activities. Id. The "fair play and substantial justice" requirement focuses on (3) whether the assertion of personal jurisdiction is reasonable and fair to the defendant. Id. Together, these three factors inform whether the exercise of personal jurisdiction over an out-of-state defendant satisfies due process in a patent case.[2] Silent Drive, 326 F.3d at 1201-02.

The burden of establishing minimum contacts rests with the plaintiff, while the burden of showing jurisdiction is unreasonable rests with the defendant. Inamed, 249 F.3d at 1360. At this point, because the parties have not yet conducted discovery, 1st Technology only needs to make a prima facie showing that PlaySafe is subject to personal jurisdiction in Missouri. Silent Drive, 326 F.3d at 1201. For this reason, the pleadings and affidavits are construed in the light most favorable to 1st Technology. Id.

**Purposefully Directed Activities**

As noted above, "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of

---

[2]These three factors are sometimes referred to as the Akro factors or Akro test. 3D Sys., Inc. v. Aarotech Labs, Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998) (citing Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)).

-4-

conducting activities within the forum State . . . ." Asahi Metal Indus., 480 U.S. at 109. Minimum contacts must be based on an act of the defendant. Id. A simple awareness that the stream of commerce will sweep a product into the forum state does not satisfy the dictates of due process. Id. at 112.

In this case, 1st Technology has not made a prima facie showing that PlaySafe is subject to personal jurisdiction in Missouri. According to the declaration of Helge Almestad, the Chairman of the Board of Directors for PlaySafe, PlaySafe is an investment company with no business operations, products, or services of its own. (Doc. 14, Ex. 1 at ¶ 6.) In addition, the company has not transacted any business in the state of Missouri. (Id. at ¶ 8.) The company has not made any contracts, committed any torts, or owned any real estate within the state. (Id. at ¶¶ 9-11.) The company does not maintain any agents, employees, offices, or facilities in the state of Missouri. (Id. at ¶¶ 7, 12, 14, 16.) PlaySafe has not sold any products, performed any services, or sold any licenses for products or software in the state of Missouri. (Id. at ¶¶ 15, 23.) Finally, PlaySafe has not placed any advertisements directed at consumers in Missouri, or placed any advertisements intended for circulation in Missouri. (Id. at 20.)

In support of jurisdiction, 1st Technology argues that the PlaySafe website encourages users to "visit some of our Poker sites," and provides hyperlinks that link directly to these websites. (Doc. 19, Ex. 1.) One of these websites is www.tigergaming.com. (Doc. 19, Ex. 2.) The homepage for tigergaming.com contains several references to PlaySafe. The bottom lefthand corner of the homepage contains the logo for PlaySafe, with the notation "Powered by PlaySafe Holding," and an embedded link that directs users back to the PlaySafe website. Directly above the logo is a statement that reads, "TigerGaming is owned and operated by Ecom Enterprises, a fully owned subsidiary of Playsafe Holding AS, a publicly listed company in Norway (OTC). All poker brands operated by Playsafe Holding AS are licensed and regulated under the rules of the Kahnawake Gaming Commission." (Id.) The TigerGaming website is interactive, allowing users to download the company's poker software directly from the website. The PlaySafe website is not

interactive; visitors to the PlaySafe website cannot input any data or download any products from the site. The TigerGaming and PlaySafe websites are both accessible from Missouri. PlaySafe Holding AS, http://www.playsafeholding.com (last visited Oct. 22, 2008); Tiger Gaming, http://www.tigergaming.com/index.php (last visited Oct. 22, 2008).

Standing alone, PlaySafe has not directed any actions towards Missouri. The PlaySafe website is passive, and does not direct any action towards Missouri. And while Missouri residents may have access to the PlaySafe website, maintaining "a passive website which is accessible throughout the world does not establish that [PlaySafe] purposely directed its actions to the forum state of Missouri, such that it could reasonably anticipate being haled into a Missouri court." Golden Trade, S.R.L. v. EV. R, Inc., No. 4:06 CV 1033 HEA, 2007 WL 1125699, at *4 (E.D. Mo. Apr. 16, 2007); see also Enter. Rent-A-Car, 137 F. Supp. 2d at 1157 ("If the website is passive, personal jurisdiction is lacking.").

The plaintiff's reliance on hyperlinks from PlaySafe's website and references to PlaySafe on TigerGaming's website is unavailing. See Aarotech Labs, 160 F.3d at 1380; Enter. Rent-A-Car, 137 F. Supp. 2d at 1159. In Aarotech, the plaintiff hoped to subject Aarotech to personal jurisdiction in California. Aarotech Labs, 160 F.3d at 1380. Aarotech maintained a website, viewable in California, but any e-mail inquiries to Aarotech's site were forwarded to its subsidiary Aaroflex. Id. The Federal Circuit found this forwarding mechanism insufficient to subject the parent company to personal jurisdiction. Id. "On its own, Aarotech directed no activity toward the residents of California; therefore, we need not examine the other two prongs of the Akro test." Id.

In Enterprise Rent-A-Car, the plaintiff hoped to subject the defendant to personal jurisdiction in Missouri. Enter. Rent-A-Car, 137 F. Supp. 2d at 1158-59. The defendant maintained a website, Virtualcar.com, that was viewable in Missouri, but otherwise passive. Id. However, for a year and a half, the Virtualcar.com website contained hyperlinks to the defendant's antique business, oldpine.com, which was interactive. Id. at 1159. The court found this hyperlinking was

insufficient to subject the defendant to personal jurisdiction. Id. "It is not 'oldpine.com' that is at issue, however. And, this Court declines to find that a link to that site supports personal jurisdiction where otherwise it is lacking." Id.

The parent-subsidiary relationship between the websites is also insufficient to justify the exercise of personal jurisdiction over PlaySafe. See Quick Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 344-45 (5th Cir. 2002); Childers v. Sagem Morpho, Inc., No. C06-60 RSM, 2006 WL 3523626, at *4-5 (W.D. Wash. Dec. 6, 2006). In Quick Technologies, the plaintiff sued the Sage Group, a British corporation, and two of its United States subsidiaries, in Texas. Quick Techs., 313 F.3d at 341-42. The plaintiff argued that hyperlinks between the website for Sage Group and the websites for the subsidiaries in the United States justified the exercise of personal jurisdiction over the Sage Group. Id. at 344. The Fifth Circuit disagreed. Id. at 345. "Sage Group's operation of a website containing company and product information and links to its U.S. subsidiaries [] does not provide sufficient grounds for the exercise of personal jurisdiction." Id.

In Childers, the plaintiff brought suit in the state of Washington against SDS, a French corporation, and two of its subsidiaries, SAS, another French corporation, and SMI, a corporation with its principal place of business in Washington. Childers, 2006 WL 3523626, at *1. The plaintiff noted that the SAS website was interactive, written in English, and directed at consumers in Washington, and that SMI operated its business in Washington and had a registered agent in the United States. Id. at *4. Taken together, the plaintiff argued that these contacts justified the exercise of personal jurisdiction over the parent corporation, SDS. Id. The court disagreed, holding that the plaintiff could not attribute or relate the actions of SAS to SDS. Id. at *5. "While plaintiff would like to link the parent and the subsidiary together for purposes of establishing minimum contacts, this is not permitted." Id.

PlaySafe is a Norwegian corporation that does not have any contacts within the state of Missouri. It does not transact any business in the state, maintain any agents, employees, or offices in the state, or sell

or advertise any products in the state.  Its website is entirely passive.
Looking to <u>Aarotech</u>, <u>Enterprise Rent-A-Car</u>, <u>Quick Technologies</u>, and
<u>Childers</u>, 1st Technology cannot look to PlaySafe's hyperlinks, or to the
interactivity of the TigerGaming website to establish PlaySafe's minimum
contacts with Missouri.[3] Taken as a whole, PlaySafe has not purposefully
availed itself of the privilege of conducting business in the state of
Missouri.

**General and Personal Jurisdiction**

There are two categories of personal jurisdiction – general and
specific.  <u>Trintec Indus.</u>, 395 F.3d at 1279; <u>Golden Trade</u>, 2007 WL
1125699, at *3  Specific jurisdiction requires that the action arise out
of, or relate to the cause of action.  <u>Trintec Indus.</u>, 395 F.3d at 1279.
General jurisdiction requires that the defendant maintain continuous and
systematic contacts with the forum state – even when the cause of action
has no relation to those contacts.  <u>Id.</u>  In general jurisdiction, the
defendant's contacts with the forum are so significant, that the exercise
of personal jurisdiction comports with due process even if the
plaintiff's injuries did not arise from the defendant's activities in the
forum.  <u>Golden Trade</u>, 2007 WL 1125699, at *3.  However, both categories
of jurisdiction require that the defendant have purposefully directed its
activities at residents of the forum, and that the assertion of personal
jurisdiction is reasonable and fair to the defendant.  <u>Id.</u>  Since
PlaySafe has not purposefully directed its activities at the state of
Missouri, the plaintiff cannot make a prima facie showing of either
specific or general jurisdiction.

---

[3]If eCom Enterprises and PlaySafe were simply alter egos, then 1st
Technology's reliance on the parent-subsidiary relationship might be
proper.  <u>See</u> <u>Childers</u>, 2006 WL 3523626, at *4.  However, 1st Technology
does not allege that eCom Enterprises and PlaySafe are alter egos, or
argue that the corporate veil should be pierced.  And in the absence of
any such arguments, "the corporate form is not to be lightly cast aside."
<u>Aarotech Labs</u>, 160 F.3d at 1380.

-8-

**Rule 4(k)(2)**

Rule 4(k)(2) of the Federal Rules of Civil Procedure provides for personal jurisdiction over foreign defendants, provided the plaintiff's claims arise under federal law, the defendant has been served, the defendant is not subject to personal jurisdiction in any state, and the exercise of federal jurisdiction is consistent with the Constitution and laws of the United States. Fed. R. Civ. P. 4(k)(2); Mwani v. bin Laden, 417 F.3d 1, 10 (D.C. Cir. 2005). Whether the exercise of jurisdiction is consistent with the Constitution depends on whether the defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment. Mwani, 417 F.3d at 11. Once again, the question of due process concerns whether the foreign defendant purposefully directed his activities at residents of the forum, and whether the litigation results from alleged injuries that arise out of, or relate to those activities. Id. at 12.

1st Technology relies on its previous arguments to support jurisdiction under Rule 4(k)(2). The company does not raise any new arguments, or assert that PlaySafe had other contacts with the United States as a whole. For the reasons stated above, 1st Technology has failed to make a prima facie case that PlaySafe has sufficient minimum contacts with the United States as a whole, to justify the exercise of personal jurisdiction under Rule 4(k)(2).

**Jurisdictional Discovery**

1st Technology moves for jurisdictional discovery. 1st Technology argues that discovery is appropriate because of PlaySafe's ambiguous admissions related to the allegedly infringing product. Depending on the meaning of the phrases "operated by" and "powered by" on the TigerGaming website, the plaintiff believes PlaySafe could be providing the infringing software, and therefore committing acts of infringement in Missouri. The plaintiff also believes that if the TigerGaming software is used in Missouri, the revenue PlaySafe derives from Missouri residents should be explored. (Doc. 19 at 7-8.)

Jurisdictional discovery is appropriate where the existing record is inadequate to support personal jurisdiction, but the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery. Trintec Indus., 395 F.3d at 1283. Jurisdictional discovery is also appropriate where the parties dispute the relevant facts surrounding the jurisdictional issue, or where the parties have not made a satisfactory showing of the relevant facts. Childers, 2006 WL 3523626, at *5. Jurisdictional discovery is inappropriate when the plaintiff pushes for jurisdiction based only on bare assertions. Id. "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995). Although the plaintiff bears the burden of proving facts to support personal jurisdiction, courts should "assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003).

On the one hand, PlaySafe's affidavit is quite clear. The company is a holding company with no business operations, products, or services of its own. (Doc. 14, Ex. 1 at ¶ 6.) On the other hand, the TigerGaming website declares that it is "Powered by PlaySafe Holding" and that "All poker brands operated by PlaySafe Holding AS are licensed and regulated under the rules of the Kahnawake Gaming Commission." (Doc. 19, Ex. 2.) TigerGaming is owned and operated by eCom Enterprises. (Id.) According to the amended complaint, eCom Enterprises offers software products that infringe the plaintiff's patent. (Doc. 4 at ¶ 9.) For purposes of the motion to dismiss, the plaintiff's allegations are accepted as true, and any disputed facts are construed in the plaintiff's favor. Toys "R" Us, 318 F.3d at 457.

Looking to the TigerGaming website and the plaintiff's amended complaint, jurisdictional discovery is appropriate. 1st Technology has pointed to some ambiguity surrounding PlaySafe's ownership and supervision of TigerGaming, an interactive website that allows users to download allegedly infringing software. If Missouri residents have

downloaded the allegedly infringing software from the TigerGaming website, eCom Enterprises, and possibly PlaySafe, may have committed a tort in Missouri. The plaintiff's request to conduct limited jurisdictional discovery concerning PlaySafe's relationship with TigerGaming, and TigerGaming's contacts with Missouri should therefore be granted. See Hewitt v. Mobile Reach Int'l, No. 6:06 CV 1105 ORL-31 KRS, 2007 WL 219973, at *1 (M.D. Fla. Jan. 26, 2007) (granting plaintiff's motion to conduct jurisdictional discovery concerning the defendant holding company's ownership and contacts with certain websites).

The motion to dismiss for lack of personal jurisdiction shall be deferred pending an opportunity for jurisdictional discovery.

**Motions to Serve by Alternate Means**

Federal Rule of Civil Procedure 4(h) describes the mechanism for serving a business entity. Fed. R. Civ. P. 4(h). Under Rule 4(h)(2), if the business is not located within the United States, service of process is conducted according to Rule 4(f), which describes the manner for serving an individual in a foreign country. Fed. R. Civ. P. 4(h)(2). Under Rule 4(f), service of process may be done in one of three ways:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
   (C) unless prohibited by the foreign country's law, by:
      (i) delivering a copy of the summons and of the complaint to the individual personally; or
      (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3).

Under the plain language of Rule 4(f)(3), service of process must be directed by the court, and must not be prohibited by any international agreement. Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002). There are no other limitations within the rule. Id. In fact, the court may order service under Rule 4(f)(3) that does not comply with the laws of the foreign country.[4] Id.

Rule 4(f)(3) stands on its own. Id. at 1015. There is no requirement that a plaintiff attempt service under either Rule 4(f)(1) or Rule 4(f)(2), before moving for leave to serve under Rule 4(f)(3). Id. "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." Id. As a result, the task of determining when the particularities and necessities of a given case require alternate service of process rests within the discretion of the district court. Studio A Entm't, Inc. v. Active Distribs., Inc., No. 1:06 CV 2496, 2008 WL 162785, at *3 (N.D. Ohio Jan. 15, 2008). At the same time, the court may require the plaintiff to show that reasonable efforts to serve the defendant have already been made, and that the court's intervention will avoid further burdensome or futile attempts at service. Id.; Ryan v. Brunswick Corp., No. 02-CV-133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002).

Applying Rule 4(f)(3), courts have authorized several alternative methods of service, including service by publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, delivery to the defendant's United States subsidiary, telex, and, increasingly, e-mail. Rio Props., 284 F.3d at 1016; In re LDK Solar Sec. Litig., No. C 07-5182 WHA, 2008 WL 2415186, at *4 (N.D. Cal. June 12, 2008). Indeed, faced with the realities of an online world, where businesses increasingly reside in servers rather than buildings, "email may be the only means of effecting service of process." Rio Props., 284 F.3d at 1018; see also Williams-Sonoma Inc. v. Friendfinder Inc., No. C

---

[4] A failure to comply with a foreign nation's service rules may, however, impair the plaintiff's chances of ultimately enforcing a judgment in that country. See Forum Fin. Group, LLC v. President, Fellows of Harvard Coll., 199 F.R.D. 22, 25 (D. Me. 2001).

-12-

06-6572 JSW, 2007 WL 1140639, at *2-*3 (N.D. Cal. Apr. 17, 2007) (authorizing service of process by e-mail under Rule 4(f)(3)); Williams v. Adver. Sex LLC, 231 F.R.D. 483, 488 (N.D. W. Va. 2005) (same); Ryan, 2002 WL 1628933, at *2 (same). But no matter what method of process the court orders, that method must comply with constitutional notions of due process. Rio Props., 284 F.3d at 1016. To satisfy the dictates of due process, the method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

**Service on CRIS and Digital Gaming Solutions**

1st Technology moves to serve CRIS and Digital Gaming Solutions, by directing service, by e-mail, on the company's United States lawyer. According to 1st Technology, CRIS and Digital Gaming Solutions are foreign corporations located in Costa Rica. (Doc. 4.) To serve these two corporations, 1st Technology hired the Oller Law Firm, a Costa Rican law firm. One of the firm's lawyers, Mauricio Bonilla Robert, attempted to serve each of these companies at their respective Costa Rican addresses. However, Robert's attempts to locate the companies were unsuccessful. Unable to locate the companies, Robert asked several individuals at the respective locations whether they knew where to locate either company. No one had heard of either company. (Doc. 28, Ex. 1; Doc. 29, Ex. 1.)

Under the circumstances, 1st Technology has made reasonable efforts to serve CRIS and Digital Gaming Solutions. See Ryan, 2002 WL 1628933, at *2. Costa Rica has not signed the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (Hague Convention).[5] Hague Convention, November 15, 1965, 20 U.S.T. 361, available at http://travel.state.gov/law/info/judicial/judicial_686.html (last visited October 28, 2008) (listing signatory countries). In addition, there do not appear to be any other relevant international agreements. See United

---

[5]Since 1st Technology seeks to serve a domestic agent, the Hague Convention would not even apply. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 707 (1988).

-13-

States Department of State, Treaties in Force, available at http://www.state.gov/s/l/treaty/treaties/2007/index.htm (last visited October 28, 2008) (listing treaties in force between the United States and other countries). Since there are no international agreements at issue, the only remaining barrier to court-ordered service under Rule 4(f)(3) is the due process requirement of Mullane.

In this case, effecting service on the lawyer for CRIS and Digital Gaming Solutions would satisfy due process. In a letter to plaintiff's counsel, Townview Trading, S.A., noted that

> James D. Henderson, Jr. of Los Angeles is the attorney for our company, Townview Trading, S.A., in regard to the lawsuit filed in the Eastern District of Missouri by your client, 1st Technology LLC. As you know, your lawsuit names "Costa Rica International Sports S.A." as defendant - it should, instead, be "Townview Trading, S.A. doing business as Costa Rica International Sports." In any case, you are authorized to release any and all documents related to the matter to Mr. Henderson.

(Doc. 28, Ex. 2.)

Digital Gaming Solutions sent a similar letter. In that letter, Digital Gaming Solutions noted that "James D. Henderson, Jr. of Los Angeles is the attorney for our company." The letter went on to state that the plaintiff's law firm was "authorized to release any and all documents related to the [lawsuit] to Mr. Henderson." (Doc. 29, Ex. 2.)

These letters indicate that the defendants have been in contact with James Henderson about the nature of this lawsuit. It follows that requiring service of process on James Henderson would be reasonably calculated to apprise the defendants of this lawsuit, and would afford them an opportunity to present their objections. See FMAC Loan Receivables v. Dagra, 228 F.R.D. 531, 536 (E.D. Va. 2005) (authorizing plaintiff to serve defendant's counsel under Rule 4(f)(3), where defendant had been "in constant communications with his attorney.").

Plaintiff's counsel has the contact information for James Henderson, and has successfully communicated with Henderson by e-mail, U.S. mail, and the telephone. (Doc. 28 at 5.) Plaintiff's counsel lists a business address for "The Law Offices of James D. Henderson, Jr." in Los Angeles. The e-mail address, however, is an AOL account. (Id.) Since there is no indication the e-mail address is used for Henderson's law office,

-14-

plaintiff's counsel should first attempt to serve Henderson by certified mail at his office.  See Ehrenfeld v. Salim a Bin Mahfouz, No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (authorizing plaintiff to serve defendant's counsel, under Rule 4(f)(3), by mail, but not e-mail).

The motions to serve CRIS and Digital Gaming Solutions by alternate means are granted.

**Service on eCom Enterprises and Action Poker**

1st Technology moves to serve eCom Enterprises and Action Poker by directing service on PlaySafe's United States lawyer.  To serve eCom Enterprises, 1st Technology followed the Hague Convention for serving a Norwegian corporation.  However, service was unsuccessful, because the plaintiff's efforts in Norway revealed that eCom Enterprises was actually located in the Netherlands Antilles.  (Doc. 30, Exs. 1, B.)  1st Technology has not been able to locate an address for eCom Enterprises in the Antilles.  (Doc. 30 at 5.)

To serve Action Poker, 1st Technology hired Mauricio Bonilla Robert and the Oller Law Firm.  Robert's attempts to serve Action Poker at its listed address were unsuccessful.  Unable to locate the company, Robert asked several individuals at different locations whether they knew where to locate Action Poker. No one had heard of the company. (Doc. 30, Ex. 3.)

Under the circumstances, 1st Technology has made reasonable efforts to serve eCom Enterprises and Action Poker.  See Ryan, 2002 WL 1628933, at *2.  As noted above, Costa Rica has not signed the Hague Convention. The Netherlands Antilles is also not a signatory to the Hague Convention, or any other relevant bilateral agreement.[6]  See Hague Convention; see

---

[6]The Netherlands has signed the Hague Convention.  However, the Netherlands Antilles is a separate country, and considered an autonomous part of the Kingdom of the Netherlands.  United States Department of State, Bureau of Consular Affairs, available at http://travel.state.gov/travel/cis_pa_tw/cis/cis_981.html (last visited October 29, 2008).  The Antilles must therefore be listed as an independent signatory to the Convention.  In fact, Aruba, which is also a separate country, and considered an autonomous part of the Kingdom of
(continued...)

-15-

also Treaties in Force.  Since there are no international agreements at issue, the only remaining barrier to service under Rule 4(f)(3) is the due process requirement of Mullane.

In this case, effecting service on PlaySafe's local counsel would not satisfy due process.  While PlaySafe's counsel has opposed the motion, PlaySafe's counsel does not represent either eCom Enterprises or Action Poker.  And unlike with CRIS and Digital Gaming Solutions, there is no evidence that PlaySafe's counsel has had any communication with either of the two companies.[7]  Indeed, the case law indicates that a court cannot authorize service on a defendant's lawyer - let alone another party's lawyer - unless there has been adequate communication between the two.  See Rio Props., 284 F.3d at 1017 (authorizing service on foreign defendant's United States lawyer, but noting the attorney "had been specifically consulted by [the defendant] regarding this lawsuit."); RSM Prod. Corp. v. Fridman, No. 06 Civ. 11512 (DLC), 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007) (authorizing service on foreign defendant's United States lawyer, but noting the attorney had assisted the defendant for years); Dagra, 228 F.R.D. at 536 (authorizing service on foreign defendant's United States lawyer, but noting the defendant had been "in constant communications with his attorney."); Forum Fin., 199 F.R.D. at 25 (authorizing service on foreign defendant's United States lawyer, but noting that the attorney did not "assert that he is not in contact with [the defendant].").  Under the circumstances, effecting service on PlaySafe's local counsel would not be reasonably calculated to apprise eCom Enterprises or Action Poker of this lawsuit and afford them an opportunity to present their objections.

---

[6](...continued)
the Netherlands, is listed as a separate signatory of the convention. See Hague Convention; see Bureau of Consular Affairs, available at http://travel.state.gov/travel/cis_pa_tw/cis/cis_1153.html (last visited October 29, 2008).

[7]PlaySafe's counsel entered an appearance on behalf of Action Poker in July.  (Doc. 9.)  However, in September, counsel moved to withdraw that appearance, explaining that it had been done inadvertently, and was the result of a miscommunication.  (Doc. 15.)  The court granted PlaySafe's counsel's motion to withdraw his appearance on behalf of Action Poker.  (Doc. 16.)

The motion to serve eCom Enterprises and Action Poker by directing service on PlaySafe's local counsel is denied.

### V.  ORDER AND RECOMMENDATION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the parties conduct limited jurisdictional discovery concerning PlaySafe's relationship with TigerGaming, and TigerGaming's contacts with Missouri.  Jurisdictional discovery shall conclude by December 15, 2008.

**IT IS FURTHER ORDERED** that the motions of plaintiff 1st Technology, LLC, to serve by alternate means defendants Costa Rica International Sports S.A. (Doc. 28) and Digital Gaming Solutions S.A. (Doc. 29) is granted.  Plaintiff's counsel should attempt to effect service of process on these two defendants by certified mail on the defendants' Los Angeles attorney.

**IT IS FURTHER ORDERED** that the motion of plaintiff 1st Technology, LLC, to serve by alternate means defendants eCom Enterprises (Doc. 30), and Action Poker Gaming Enterprises (Doc. 30) is denied.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 31, 2008