```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION


1ST TECHNOLOGY, LLC                 )
                                    )
            Plaintiff,              )
                                    )
       v.                           )     No. 4:08 CV 586 DDN
                                    )
 DIGITAL GAMING SOLUTIONS S.A.,     )
COSTA RICA INTERNATIONAL SPORTS     )
S.A., ACTION POKER GAMING           )
ENTERPRISES, eCOM ENTERPRISES,      )
PLAYSAFE HOLDING AS, SBG GLOBAL,    )
and DIGITAL GAMING NETWORK, LTD.,   )
                                    )
            Defendants.             )
```

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendant, Digital Gaming Solutions S.A., to dismiss for lack of personal jurisdiction (Doc. 52), and the motion of plaintiff, 1st Technology, LLC, to serve by alternative means defendant SBG Global (Doc. 58). The matter was assigned to the undersigned United States Magistrate Judge for consideration under 28 U.S.C. § 636(b).

**I. BACKGROUND**

1st Technology, LLC, brought this action for patent infringement against Digital Gaming Solutions S.A. (DGS), Costa Rica International Sports S.A. (CRIS), Action Poker Gaming Enterprises (Action Poker), PlaySafe Holding AS (PlaySafe), eCom Enterprises, SBG Global, and Digital Gaming Network Ltd. (Digital Gaming Network). (Doc. 4.)

According to the amended complaint, DGS, CRIS, Action Poker, and SBG Global are foreign corporations located in Costa Rica, PlaySafe and eCom Enterprises are foreign corporations located in Norway, and Digital Gaming Network is a foreign corporation located in Curaçao. (Id. at ¶¶ 5-11.) 1st Technology alleges that the court has personal jurisdiction over the defendants because the defendants committed acts of infringement in this district, conducted business in this district,

and/or maintained systematic and continuous contacts in this district. (Id. at ¶ 13.)

## II. SERVICE OF PROCESS

Plaintiff's attempts to serve SBG Global, Digital Gaming Network, Action Poker, and eCom Enterprises have been unsuccessful. (See Docs. 20, 23, 25, 55.) On January 16, 2009, the court issued an order requiring 1st Technology to show cause why the court should not dismiss these four defendants for want of service. (Doc. 49.) On January 28, 2009, 1st Technology responded to the court's order by detailing its efforts to effect service on the defendants. (Doc. 55.) In its response, 1st Technology noted that it had filed a motion for leave to serve SBG Global through its United States lawyers, that it was close to reaching a settlement with eCom Enterprises and Action Poker, and that it was still waiting to hear from the Curaçao government concerning its efforts to serve Digital Gaming Network. Service of process can take up to a year in Curaçao, and the government does not provide updates on the process. (Id.)

On February 23, 2009, 1st Technology moved to serve SBG Global by serving process on its United States lawyers. (Doc. 58.) On March 2, 2009, 1st Technology received a letter from Kevin Finger, a lawyer with Greenberg Traurig, LLP. (Doc. 59, Ex. 1.) In the letter, Finger informed 1st Technology that William Johnson, Patrick O'Brien, and he no longer represented SBG Global, and that they were unable and unwilling to accept service on behalf of SBG Global. (Id.)

On March 4, 2009, 1st Technology notified the court that it had reached a settlement with PlaySafe Holding, eCom Enterprises, and Action Poker. (Doc. 60.) On March 19, 2009, 1st Technology filed a notice of voluntary dismissal of its claims against these three defendants. (Doc. 62.) By order issued herewith the court has sustained plaintiff's motion for leave to file a second amended complaint (Doc. 63.)

## III. MOTION TO DISMISS

DGS moves to dismiss the case against it for lack of personal jurisdiction. (Doc. 52.) DGS argues that it does not make, use, sell,

license, or offer to sell any products or services in the United States. DGS argues that it does not have any employees in Missouri, has not paid taxes in Missouri, and does not conduct any business in Missouri. DGS argues its website is not interactive, but simply passive, and does not allow users to download software or exchange information. Finally, DGS notes that it only develops software for the management of online casino gaming, and that is does not have any gaming interests of its own.[1] (Docs. 53, 57.) The President of DGS, Manuel Arce, filed an affidavit in support of these arguments. (Doc. 53, Ex. 1.)

In response, 1st Technology argues that DGS is subject to personal jurisdiction based on specific jurisdiction, general jurisdiction, and Rule 4(k)(2). In particular, 1st Technology argues that DGS's website provides links to many of its clients, some of whom have made the allegedly infringing software available for download. 1st Technology also argues that DGS's website allows users to exchange information with the site, by allowing users to enter their personal information in order to "arrange for an on-line demo of any DGS products." In the alternative, if the court finds there is no personal jurisdiction, 1st Technology requests leave to conduct jurisdictional discovery. (Doc. 56.)

### IV. MOTION TO SERVE BY ALTERNATE MEANS

1st Technology moves to serve SBG Global by alternative means. In particular, 1st Technology moves to serve SBG Global by directing service by e-mail or certified mail on the company's United States lawyers, William Johnson, Patrick T. O'Brien, and Kevin Finger. 1st Technology notes that its original efforts to serve SBG Global in Costa Rica were unsuccessful. (Doc. 58.)

---

[1] There are three categories of Internet sites: 1) interactive sites, which are used to conduct business over the Internet; 2) semi-interactive sites, which allow an exchange of information with the host computer; and 3) passive sites, which do not conduct business, and do not allow any exchange of information between the user and the host computer. See Enter. Rent-A-Car Co. v. Stowell, 137 F. Supp. 2d 1151, 1155 (E.D. Mo. 2001).

## V. DISCUSSION

The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County, 480 U.S. 102, 109 (1987). In cases intimately involved with patent law, the law of the Federal Circuit applies to jurisdictional questions, and not the law of the regional circuit. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001).

Whether a state can exercise personal jurisdiction over an out-of-state defendant involves a dual inquiry. Id. The first question asks whether the state's long-arm statute permits service of process. Id. The second question asks whether the assertion of personal jurisdiction would violate due process. Id. In situations where the state long-arm statute is coextensive with the limits of due process, these two inquiries coalesce into one. Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005). In Missouri, the state's long-arm statute is broadly construed to reach as far as due process will allow. Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000). As a result, the focus in this case is on the due process requirement. See Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003); see Enter. Rent-A-Car, 137 F. Supp. 2d at 1155.

To subject an out-of-state defendant to personal jurisdiction, due process requires that the defendant have certain minimum contacts with the forum state, such that maintaining the lawsuit does not offend traditional notions of fair play and substantial justice. Inamed, 249 F.3d at 1360 (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). The "minimum contacts" requirement focuses on (1) whether the defendant has purposefully directed his activities at residents of the forum, and (2) whether the litigation results from alleged injuries that arise out of, or relate to those activities. Id. The "fair play and substantial justice" requirement focuses on (3) whether the assertion of personal jurisdiction is reasonable and fair to the defendant. Id. Together, these three factors inform whether the exercise of personal jurisdiction

over an out-of-state defendant satisfies due process in a patent case.[2] Silent Drive, 326 F.3d at 1201-02.

The burden of establishing minimum contacts rests with the plaintiff, while the burden of showing jurisdiction is unreasonable rests with the defendant. Inamed, 249 F.3d at 1360. At this point, because the parties have not yet conducted discovery, 1st Technology only needs to make a prima facie showing that DGS is subject to personal jurisdiction in Missouri. Silent Drive, 326 F.3d at 1201. For this reason, the pleadings and affidavits are construed in the light most favorable to 1st Technology. Id.

**Purposefully Directed Activities**

As noted above, "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State. . . ." Asahi Metal Indus., 480 U.S. at 109. Minimum contacts must be based on an act of the defendant. Id. A simple awareness that the stream of commerce will sweep a product into the forum state does not satisfy the dictates of due process. Id. at 112.

In support of jurisdiction, 1st Technology argues that DGS provides hyperlinks to twenty-eight of its clients, which use DGS's software. According to 1st Technology, there are thirty-three other websites that use DGS's allegedly infringing software. Of all the websites, five of them make DGS's allegedly infringing software available for download from their respective websites. The website, www.bookmaker.com, is one of these sites. (Doc. 56 at 7-8.) 1st Technology adds that the DGS website advertises its products, including the allegedly infringing software, and boasts that its clients' customers are able to place bets "from pretty much anywhere." (Doc. 56, Ex. 4) The DGS website notes that its software helps its clients manage more than three million hits a day. Finally, 1st Technology notes that the DGS website provides

---

[2]These three factors are sometimes referred to as the Akro factors or Akro test. 3D Sys., Inc. v. Aarotech Labs, Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998) (citing Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)).

information to potential customers, and invites them to leave their contact information so they can receive "an on-line demo of any DGS product." (Doc. 56 at 9.)

On the other hand, DGS has not demonstrated contacts with either Missouri or the United States. According to Arce, DGS's President, DGS is a private corporation located in Costa Rica, and organized under the laws of that country. The company develops software for the online casino gaming industry, but does not have any gaming interests of its own. The company has twenty-five employees, all of whom are located in Costa Rica. Since being organized, DGS has not transacted any business in the state of Missouri. The company has not made any contracts, committed any torts, or owned any real estate within the state. DGS has not sold any products, performed any services, licensed, or sold any licenses for products or software in the state of Missouri. The company has not placed any advertisements directed at consumers in Missouri, or placed any advertisements intended for circulation in Missouri. DGS's website does not permit visitors to download any software or transact business with the company. (Doc. 53, Ex. 1 at 1-5.)

The DGS website is semi-interactive, allowing users to leave their contact information and request further information, but not allowing users to download software or conduct business. See People Solutions Inc. v. People Solutions, Inc., No. Civ. A. 399-CV-2339-L, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000) (classifying a website with similar features as semi-interactive); but see Vang v. Whitby Tool & Eng'g Co. Ltd., 484 F. Supp. 2d 966, 971 (D. Minn. 2007) (classifying a website with similar features as "fairly passive."). This limited amount of interactivity does not support personal jurisdiction. See People Solutions, 2000 WL 1030619, at *4; see also Boppy Co. v. Luvee Prods. Corp., No. 04-MK-320 (OES), 2004 WL 2608265, at *5 (D. Colo. May 25, 2004) ("A website, even if interactive, is insufficient to create personal jurisdiction where that website has gone unused by residents of the forum state.").

In People Solutions, the defendant's website allowed users to download product demos, take performance tests, and order products online. People Solutions, 2000 WL 1030619, at *3. The website also

provided users with a registration form for obtaining product brochures, test demonstration diskettes, or answers to questions. Id. But because there was no evidence that any Texas residents had actually taken advantage of any of these online services, the court found it lacked personal jurisdiction over the defendant. Id. at *4. "Personal jurisdiction should not be premised on the mere possibility, with nothing more, that Defendant may be able to do business with Texans over its web site; rather, Plaintiff must show that Defendant has 'purposefully availed itself' of the benefits of the forum state and its laws." Id. In other words, merely providing a company e-mail address and/or a hyperlink for customers to contact the company does not constitute the kind of interactivity required to support the exercise of personal jurisdiction over a foreign defendant. Amazon Tours, Inc. v. Wet-A-Line Tour LLC, No. 3-01-CV-1433-R, 2002 WL 230895, at *3 (N.D. Tex. Jan. 31, 2002).

Several other courts have found they lacked personal jurisdiction over foreign defendants with websites with similar interactivity. See e.g. Trintec Indus., 395 F.3d at 1281; Mink v. AAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999); Zombeck v. Amada Co. Ltd., Civil Action No. 06-953, 2007 WL 4105231, at *4-5 (W.D. Pa. Nov. 15, 2007); Vang, 484 F. Supp. 2d at 971; Panacea Solutions, Inc. v. Roll, No. 05 Civ. 10089(RCC), 2006 WL 3096022, at *2, *3 (S.D.N.Y. Oct. 31, 2006); Renaissance Pen Co. v. Krone LLC, No. 4:04 CV 557 DDN (E.D. Mo. Apr. 11, 2006).

For example, in Mink, the defendant's website provided information about the company's products and services, and offered users a printable mail-in order form, along with the company's telephone number, mailing address, and e-mail address. Mink, 190 F.3d at 336-37. But absent any evidence that the website allowed users to purchase its products or services, these features were insufficient to support personal jurisdiction. Id. at 337. In Zombeck, the defendant's website allowed users to request additional information about the company's products by filling out forms, and included hyperlinks to its subsidiaries. Zombeck, 2007 WL 4105231, at *5, *7. The website did not allow for direct purchases, however; the website did not accept credit card

numbers, banking information, or other forms of payment. Id. at *5. But without any evidence the defendant had directly targeted its website to the forum state or knowingly interacted with state residents through its website, the court lacked personal jurisdiction over the defendant. Id. at *4. "The mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world." Id.; see also Trintec Indus., 395 F.3d at 1281 ("the ability of [forum] residents to access the defendants' websites does not by itself show any persistent course of conduct by the defendants in the [forum].").

The plaintiff's reliance on hyperlinks and the attributes of third-party websites is unavailing. See Mullaly v. Jones, No. 2:05 CV 154 BES-GWF, 2007 WL 674294, at *6 (D. Nev. Feb. 28, 2007); Enter. Rent-A-Car, 137 F. Supp. 2d at 1159. In Enterprise Rent-A-Car, the plaintiff hoped to subject the defendant to personal jurisdiction in Missouri. Enter. Rent-A-Car, 137 F. Supp. 2d at 1158-59. The defendant maintained a website, Virtualcar.com, that was viewable in Missouri, but otherwise passive. Id. However, for a year and a half, the Virtualcar.com website contained hyperlinks to the defendant's antique business, oldpine.com, which was interactive. Id. at 1159. The court found this hyperlinking was insufficient to subject the defendant to personal jurisdiction. Id. "It is not 'oldpine.com' that is at issue, however. And, this Court declines to find that a link to that site supports personal jurisdiction where otherwise it is lacking." Id.

In Mullaly, the plaintiff hoped to subject the defendants to personal jurisdiction in Nevada. Mullaly, 2007 WL 674294, at *6. In support of jurisdiction, the plaintiff argued that the defendants' website contained links to its licensees, and that these third-party casino websites presumably accepted bets from Nevada residents. Id. The court found these speculative contacts insufficient to support the exercise of personal jurisdiction. Id. "[T]he activity of those hyperlinked websites supports jurisdiction only if Defendants maintain some responsibility for or control over the activities and contents of the third-party gaming sites." Id. (citing Trintec Indus., 395 F.3d at 1281). In this case, there is no evidence that DGS maintains responsibility or control over its licensees' websites.

DGS is a Costa Rican corporation that does not have any contacts within the state of Missouri. It does not transact any business in the state, maintain any agents, employees, or offices in the state, or sell or advertise any products in the state. Its website does not allow users to download or purchase its products or services; the website does not contain any methods for accepting payment. There is no evidence DGS used its website to directly target Missouri residents or that the company has interacted with any Missouri residents through its website. Finally, there is no evidence DGS maintains any control or responsibility over its licensees' websites. Under the circumstances, there is simply no evidence DGS personally availed itself of the privilege of conducting business in the state of Missouri.

**General and Specific Jurisdiction**

There are two categories of personal jurisdiction - general and specific. <u>Trintec Indus.</u>, 395 F.3d at 1279; <u>Golden Trade, S.R.L. v. EV. R, Inc.</u>, No. 4:06 CV 1033 HEA, 2007 WL 1125699, at *4 (E.D. Mo. Apr. 16, 2007). Specific jurisdiction requires that the action arise out of, or relate to the cause of action. <u>Trintec Indus.</u>, 395 F.3d at 1279. General jurisdiction requires that the defendant maintain continuous and systematic contacts with the forum state - even when the cause of action has no relation to those contacts. <u>Id.</u> In general jurisdiction, the defendant's contacts with the forum are so significant, that the exercise of personal jurisdiction comports with due process even if the plaintiff's injuries did not arise from the defendant's activities in the forum. <u>Golden Trade</u>, 2007 WL 1125699, at *3. However, both categories of jurisdiction require that the defendant have purposefully directed its activities at residents of the forum, and that the assertion of personal jurisdiction is reasonable and fair to the defendant. <u>Id.</u> Since DGS has not purposefully directed its activities at the state of Missouri, the plaintiff cannot make a prima facie showing of either specific or general jurisdiction.

**Rule 4(k)(2)**

Rule 4(k)(2) of the Federal Rules of Civil Procedure provides for personal jurisdiction over foreign defendants, provided the plaintiff's claims arise under federal law, the defendant has been served, the defendant is not subject to personal jurisdiction in any state, and the exercise of federal jurisdiction is consistent with the Constitution and laws of the United States. Fed. R. Civ. P. 4(k)(2); Mwani v. bin Laden, 417 F.3d 1, 10 (D.C. Cir. 2005). Whether the exercise of jurisdiction is consistent with the Constitution depends on whether the defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment. Mwani, 417 F.3d at 11. Once again, the question of due process concerns whether the foreign defendant purposefully directed his activities at residents of the forum, and whether the litigation results from alleged injuries that arise out of, or relate to those activities. Id. at 12.

1st Technology relies on its previous arguments to support jurisdiction under Rule 4(k)(2). The company does not raise any new arguments, or assert that DGS has other contacts with the United States as a whole. For the reasons stated above, 1st Technology has failed to make a prima facie case that DGS has sufficient minimum contacts with the United States as a whole to justify the exercise of personal jurisdiction under Rule 4(k)(2).

**Jurisdictional Discovery**

1st Technology moves for jurisdictional discovery. In particular, 1st Technology seeks to discover how many citizens of Missouri or the United States have used or downloaded the allegedly infringing software produced by DGS. 1st Technology also seeks to discover how DGS is paid for the use of its software, and where the licensed companies and their respective customers are located. Finally, 1st Technology seeks to discover the extent of DGS's contacts with the United States as a whole, most notably whether DGS has any licensing agreements with companies located in the United States. (Doc. 56 at 7-13.)

Jurisdictional discovery is appropriate where the existing record is inadequate to support personal jurisdiction, but the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery. Trintec Indus., 395 F.3d at 1283. Jurisdictional discovery is also appropriate where the parties dispute the relevant facts surrounding the jurisdictional issue, or where the parties have not made a satisfactory showing of the relevant facts. Childers v. Sagem Morpho, Inc., No. C06-60 RSM, 2006 WL 3523626, at *5 (W.D. Wash. Dec. 6, 2006). Jurisdictional discovery is inappropriate when the plaintiff pushes for jurisdiction based only on bare assertions. Id. "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995). Although the plaintiff bears the burden of proving facts to support personal jurisdiction, courts should "assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003).

1st Technology's claim against DGS is not clearly frivolous. The plaintiff may discover how many citizens of Missouri or the United States have used or downloaded the allegedly infringing software produced by DGS. 1st Technology may also discover how DGS is paid for the use of its software, where the licensed companies and their respective customers are located, whether DGS has any licensing agreements with companies located in the United States, and the extent of DGS's contacts with the United States as a whole. See Pierce v. Haywood Indus., Inc., No. Civ. A. 05-5322, 2006 WL 891149, at *5 (E.D. Pa. Apr. 4, 2006) (allowing plaintiff to conduct jurisdictional discovery on the number of customers located in the forum state and on the business relationship between the out-of-state manufacturer and the out-of-state supplier).

The motion to dismiss for lack of personal jurisdiction shall be deferred pending an opportunity for jurisdictional discovery.

**Motion to Serve by Alternate Means**

On February 23, 2009, 1st Technology moved to serve SBG Global by directing service by e-mail or certified mail on the company's United States lawyers, William Johnson, Patrick T. O'Brien, and Kevin Finger. 1st Technology noted that its original efforts to serve SBG Global in Costa Rica were unsuccessful. (Doc. 58.) On March 2, 2009, the plaintiff received a letter from Johnson, O'Brien, and Finger, informing 1st Technology that they had ceased representing SBG Global on October 3, 2008. (Doc. 59, Ex. 1.)

Federal Rule of Civil Procedure 4(h) describes the mechanism for serving a business entity. Fed. R. Civ. P. 4(h). Under Rule 4(h)(2), if the business is not located within the United States, service of process is conducted according to Rule 4(f), which describes the manner for serving an individual in a foreign country. Fed. R. Civ. P. 4(h)(2). Under Rule 4(f), service of process may be done in one of three ways:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>   (C) unless prohibited by the foreign country's law, by:
>     (i) delivering a copy of the summons and of the complaint to the individual personally; or
>     (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3).

Under the plain language of Rule 4(f)(3), service of process must be directed by the court, and must not be prohibited by any international agreement. Rio Props., Inc. v. Rio Int'l Interlink, 284

F.3d 1007, 1014 (9th Cir. 2002). There are no other limitations within the rule. Id. In fact, the court may order service under Rule 4(f)(3) that does not comply with the laws of the foreign country. Id. The court may also allow the plaintiff to attempt service under Rule 4(f)(3) before attempting service under either Rule 4(f)(1) or Rule 4(f)(2). Id. at 1015. "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." Id. As a result, the task of determining when the particularities and necessities of a given case require alternate service of process rests within the discretion of the district court. Studio A Entm't, Inc. v. Active Distribs., Inc., No. 1:06 CV 2496, 2008 WL 162785, at *3 (N.D. Ohio Jan. 15, 2008). At the same time, the court may require the plaintiff to show that reasonable efforts to serve the defendant have already been made, and that the court's intervention will avoid further burdensome or futile attempts at service. Id.; Ryan v. Brunswick Corp., No. 02-CV-133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002).

Applying Rule 4(f)(3), courts have authorized several alternative methods of service, including service by publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, delivery to the defendant's United States subsidiary, telex, and, increasingly, e-mail. Rio Props., 284 F.3d at 1016; In re LDK Solar Sec. Litig., No. C 07-5182 WHA, 2008 WL 2415186, at *4 (N.D. Cal. June 12, 2008). But no matter what method of process the court orders, that method must comply with constitutional notions of due process. Rio Props., 284 F.3d at 1016. To satisfy the dictates of due process, the method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

A court cannot authorize service on a foreign defendant's lawyer unless there has been adequate communication between the two. See Rio Props., 284 F.3d at 1017 (authorizing service on foreign defendant's United States lawyer, but noting the attorney "had been specifically consulted by [the defendant] regarding this lawsuit."); RSM Prod. Corp.

v. Fridman, No. 06 Civ. 11512 (DLC), 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007) (authorizing service on foreign defendant's United States lawyer, but noting the attorney had assisted the defendant for years); FMAC Loan Receivables v. Dagra, 228 F.R.D. 531, 536 (E.D. Va. 2005) (authorizing service on foreign defendant's United States lawyer, but noting the defendant had been "in constant communications with his attorney."); Ehrenfeld v. Salim a Bin Mahfouz, No. 04 Civ. 9641(RCC), 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (authorizing service on foreign defendant's United States counsel, but noting the "attorneys must be in communication with Defendant in relation to the pending legal proceedings in the United States and . . . and will know how to locate Defendant."); Forum Fin. Group, LLC v. President, Fellows of Harvard Coll., 199 F.R.D. 22, 25 (D. Me. 2001) (authorizing service on foreign defendant's United States lawyer, but noting that the attorney did not "assert that he is not in contact with [the defendant].").

In their letter to 1st Technology's counsel, William Johnson, Patrick T. O'Brien, and Kevin Finger clearly stated that they no longer represent SBG Global and were unwilling to accept service on behalf of SBG Global. According to that letter, a period of over four months separates the time between 1st Technology's motion to serve SBG Global through Johnson, O'Brien, and Finger, and the cessation of their representation of SBG Global. There is no indication these lawyers maintain any contact with SBG Global, or are aware of its current location. See Ehrenfeld, 2005 WL 696769, at *3. As a result, effecting service on SBG's former counsel would not be reasonably calculated to apprise the company of this lawsuit and afford it an opportunity to present its objections.

The motion to serve SBG Global by directing service on its past local counsel is denied.

### VI. ORDER

For the reasons stated above,

**IT IS HEREBY ORDERED** that the parties may conduct limited jurisdictional discovery. The plaintiff may discover how many citizens of Missouri or the United States have used or downloaded the allegedly

- 14 -

infringing software produced by DGS. 1st Technology may also discover how DGS is paid for the use of its software, where the licensed companies and their respective customers are located, whether DGS has any licensing agreements with companies located in the United States, and the extent of DGS's contacts with the United States as a whole. Jurisdictional discovery shall conclude by April 17, 2009.

**IT IS FURTHER ORDERED** that the motion of plaintiff 1st Technology, LLC, to serve SBG Global by alternate means (Doc. 58) is denied.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 30, 2009.